IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

AUBREY FERRAO, TINA FERRAO
AND MARK J WOODWARD, AS
TRUSTEE OF LAND TRUST
DATED APRIL 5, 1987,
    Plaintiffs,                                  CASE NO. 20-CV-657-FTM-66MRM

vs.

ACE INSURANCE COMPANY OF
THE MIDWEST,
    Defendant.                          /

**PLAINTIFFS' MOTION TO EXCLUDE ANY POTENTIAL[1] TESTIMONY BY DEFENDANT'S PURPORTED EXPERT, BART BARRETT, REGARDING THE AVAILABILITY OF "MATCHING" REPLACEMENT SLATE**

Plaintiffs, Aubrey Ferrao, Tina Ferrao and Mark J Woodward, as Trustee of Land Trust Dated April 5, 1987 ("Plaintiffs"), by and through undersigned counsel, hereby moves this Court to exclude any potential testimony by purported expert Bart Barrett of Nelson Forensics, LLC ("Barrett"), disclosed in this action by Defendant, ACE Insurance Company of the Midwest ("ACE"), regarding the availability of "matching" replacement slate tile and as grounds, states:

I. **INTRODUCTION & OPERATIVE FACTS.**

This lawsuit involves a claim for breach of an insurance policy in which ACE has failed and refused to provide coverage for property damages suffered during Hurricane Irma. Specifically, Plaintiffs claim the slate roof over their residence in the

---

[1] This motion is being written in an abundance of caution, because it is not expected that Barrett will actually be offering any opinion on the availability of matching slate, especially in the quantities needed to perform ACE's proposed repairs.

1

Port Royal community in Naples, Florida must be replaced due to extensive windstorm damage suffered during Hurricane Irma. Plaintiffs' experts contend that the damaged areas exceed 25% of entire square footage of the roof, requiring a full replacement. ACE has refused to acknowledge that the slate roof must be replaced, instead contending that the roof can be repaired. Barrett is one five (5) cumulative experts presented by ACE in support of its position that the roof can be repaired and achieve conformity to pre-storm conditions.[2] Interestingly, however, Barrett adopts the opinion of another Plaintiffs' expert, Joseph Kelly, that *all* of the damage suffered to the roof was a result of windstorm damage from Hurricane Irma.[3] *See* **Exhibit B**, Tr. 159:24-160:22. [4]

In order for ACE to avoid insurance coverage for the full cost of replacing the roof, it must not only prove damage less than 25% of the area of the roof and that repairs can be undertaken to make the roof conform with pre-storm conditions, but also that "matching" replacement slate tile is available in sufficient quantity to address all areas that need to be repaired.

---

[2] ACE has designated the following experts: (1) Bart B. Barrett, P.E. of Nelson Forensics, LLC; (2) Chad Brandon of JS Held LLC; (3) Brian Waller of Consult 1 LLC; (4) Joseph Kelly of WTS; and (5) Curt Furbee of Crowther Roofing & Sheet Metal of Florida.

[3] Joseph Kelly issued a report entitled "800 Spyglass Lane, Naples, Florida – Survey of Roofing Assets & Hurricane Damage Assessment" ("WTS Report") which was included as support for the Hurricane Irma Distress Evaluation report issued by Barrett. A copy of the WTS Report, without exhibits, is attached hereto as **Exhibit A**. Therein, Kelly unequivocally states: "WTS chooses to attribute *all* noted tile damages (excluding pitting or discoloration due to iron oxidation) to hurricane wind conditions." *See* **Exhibit A** p. 5 (emphasis added).

[4] A copy of Barrett's deposition transcript has been filed. [DE 63-1]. Relevant excerpts from that transcript are attached hereto as **Composite Exhibit "B"**. Tr. refers to the deposition transcript page and line number.

During his June 1, 2022 deposition, Barrett was asked questions about the availability of "matching" replacement slate for ACE's proposed repairs. Barrett admitted that he is not qualified to render any opinion and did not research on the availability of matching slate in the sufficient quantities needed for ACE's proposed repairs. Accordingly, to the extent Barrett is asked to offer any opinions on the availability of "matching" replacement slate tile for ACE's proposed repairs, his opinions should be disallowed as they will not meet the requirements for admissibility.

II.   **STANDARD FOR ADMISSION OF EXPERT TESTIMONY**.

It is well established that a district judge has broad discretion in determining whether to exclude expert testimony. *See United States v. US Infrastructure, Inc.*, 576 F.3d 1195, 1212 (11th Cir. 2009); *Saewitz v. Lexington Ins. Co. Co.*, 133 F. App'x 695, 700 (11th Cir. 2005). Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. R. 702.14 (2022).

Under *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 597 (1993), trial judges act as gatekeepers to exclude irrelevant and unreliable expert testimony. *See also,*

*Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 n.7 (11th Cir. 2010). In determining whether expert testimony is admissible as part of its "gatekeeper" duties, the Court must consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc); *Rink v. Cheminova, Inc.*, 400 F.3d 1286 (11th Cir. 2005).

The gatekeeping function applies to all expert testimony, not just scientific testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147-49 (1991) (quoting Fed. R. Evid. 702). When evaluating the reliability of non-scientific, experienced-based testimony, a court must consider: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular . . . technique; and (4) whether the technique is generally accepted in the … community." *Frazier*, 387 F.3d at 1262. Moreover, "if the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *Id.* at 1261 (emphasis in original). Indeed, "[t]he trials

court's gatekeeping function requires more than simply 'taking the expert's word for it.'" *Id.* (quoting Fed. R. Evid. 702 Advisory Committee Note (two thousand)).

The Court's gatekeeping role requires it to undertake an exacting analysis of the proffered expert testimony "to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). It is Defendant's burden to show that the proffered testimony of its experts satisfies all three (3) prongs of Fed. R. Evid. 702 and *Daubert*. *Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1194 (11th Cir. 2010). "Presenting a summary of a proffered expert's testimony in the form of conclusory statements devoid of factual or analytical support is simply not enough" to meet that burden, and Rule 702 "requires more than the *ipse dixit* of the expert." *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005) (quotation and citation omitted); *see also, Michigan Millers Mut. Ins. Corp. v. Benfield*, 140 F.3d 915, 921 (11th Cir. 1998) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert"); *Guinn v. AstraZeneca Pharm. LP*, 602 F.3d 1245, 1255-56 (11th Cir. 2010).

For the reasons set forth more fully herein, to the extent Barrett is asked to offer any opinions on the availability of "matching" replacement slate tile for ACE's proposed repairs at the sufficient quantities for ACE's proposed repairs, his opinions should be disallowed as they will not meet the requirements for admissibility.

### III. ANY POTENTIAL TESTIMONY FROM BARRETT ON THE AVAILABILTY OF MATCHING REPLACEMENT SLATE SHOULD BE EXCLUDED FROM THE TRIAL IN THIS ACTION.

As stated above, it is not expected that Barrett will actually be offering any testimony on "matching" slate, especially in the sufficient quantities needed to perform ACE's proposed repairs. In an abundance of caution, to the extent Barrett is asked any opinions on the "matching" slate for ACE' proposed repairs, his testimony should be excluded because he is admittedly not qualified, and also he did no research on the availability of "matching" replacement slate in the sufficient quantities needed for ACE's proposed repairs.

### A. Barrett admits he is not qualified to render any opinion on the availability of matching replacement slate for ACE's proposed repairs.

During his deposition, Barrett was asked about the need for matching slate in a repair process. Barrett agreed, stating "I think in relation to most roofing cases and distress tiles there is an issue relating to matching that has to be addressed." *See* **Exhibit B**, Tr. 153:13-17. As a benchmark to what he is looking for when replacing slate in a repair, Barrett said he saw "multiple remedial tiles that have been installed on this roof [previously] that did not match" and "I would want to see matching tiles of roof that I was repairing." *See* **Exhibit B**, Tr. 154:4-15. With that foundation, questions were asked about his knowledge of the availability of matching replacement slate needed for ACE's proposed repairs. Repeatedly, Barrett admitted that he was not an expert in the procurement of matching slate:

> Q: Do you recall that in terms of replacement slate that there is a requirement to replace all slates that match the existing slates in type, length, width, thickness, shape, color and, if necessary, for a good match, age?
>
> A: So, I know that it's good practice to the degree that it can be accomplished. **But, once again, I would go back to the slate expert to procuring the appropriate slate for repairs that should be performed at this structure**.

*See* **Exhibit B**, Tr. 243:1-10 (emphasis added).

Based upon Barrett's admission of not being an expert on procuring matching slate, Barrett should be excluded from testifying at trial on the relevant issue of "matching." *Frazier,* 387 F.3d at 1262*; Rink*, 400 F.3d 1286.

### B. Barrett did not research the availability of matching slate in the sufficient quantities needed for ACE's proposed repairs.

Applying Florida law, and per the admissions of ACE's corporate representative and the terms of the Policy, ACE needs to locate matching in the quantities needed for ACE's proposed repairs. *See* Womack Deposition Transcript [DE 71-1 Tr. 117:20-118:13]; the Policy [DE 80-12 p. 75 of 148, ¶13]; *see also*, Fla. Stat. §626.9744 (2022); and *CMR Constr. & Roofing, LLC v. ASI Preferred Ins. Corp.*, 2021 WL 877560, *8 (M.D. Fla. 2021) (matching is required if the policy so provides.). Barrett is no help to ACE in this regard. When questioned about the availability of matching slates to selectively replace the 1,200 slate pieces found to have suffered windstorm damage from Hurricane Irma, Barrett testified "We did not perform that research." *See* **Exhibit B**, Tr. 170:24-171:3. And, with Barrett's agreement that the 1,200 slate pieces "should not be construed as an assessment of the total damages of the structure

at the time of site observation" or any "hidden defects that may exist that were not readily visible," s*ee* **Exhibit B**, Tr. 159:24-160:22, and also does not include the 3:1 tile ratio needed in stock due to breakage, s*ee* **Exhibit B**, Tr.. 153:18-154:3, even 1,200 slate pieces is woefully insufficient.

Doing no research on the availaby of matching slate in the sufficient quantity to perform ACE's proposed repairs makes any opinion of Barrett on "matching" unreliable. Accordingly, Barrett should be excluded from testifying at trial on the relevant issue of "matching." *Frazier,* 387 F.3d at 1262*; Rink*, 400 F.3d 1286.

### IV.   CONCLUSION.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that to the extent ACE relies on the opinions of Barrett regarding the availability of "matching" replacement slate tile, Barrett's opinions and testimony should be excluded from the trial in this action, and that Plaintiffs be granted all other relief that is just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 29, 2022, a true and correct copy of the foregoing was served via CM/ECF on all counsel or parties of record:

| | |
|---|---|
| **Kristin Wood Elza, Esq.**<br>Butler Weihmuller Katz Craig LLP<br>Florida Bar No.: 0153354<br>kelza@butler.legal<br>400 N. Ashley Drive, Suite 2300<br>Tampa, Florida 33602<br>Telephone: (813) 281-1900<br>Facsimile: (813) 281-0900<br>*Attorney for Defendant* | **Meghan C. Moore, Esq.**<br>Florida Bar No. 668958<br>meghan.moore@flastergreenberg.com<br>**Nicole A. Josephy, Esq.**<br>Florida Bar No. 124492<br>Nicole.josephy@flastergreenberg.com<br>FLASTER GREENBERG PC<br>2255 Glades Road, Suite 324A<br>Boca Raton, FL 33431<br>Telephone: (561) 961-4508<br>*Attorney for Plaintiffs* |
| **Ricardo A. Reyes, Esq.**<br>Tobin & Reyes, P.A.<br>225 NE Mizner Blvd., Suite 510<br>Boca Raton, Florida 33432<br>rar@tobinreyes.com<br>Telephone: (561) 620-0656<br>*Attorney for Plaintiffs* | |

**CHEFFY PASSIDOMO, P.A.**
*Counsel for Plaintiffs*
4100 W. Kennedy Blvd., Suite 335
Tampa, FL 33609
(239) 261-9300

By: */s/ David A. Zulian*
**Edward K. Cheffy, Esq.**
Florida Bar No. 393649
ekcheffy@napleslaw.com
ffharper@napleslaw.com
**David A. Zulian, Esq.**
Florida Bar No. 711012
dazulian@napleslaw.com
glhamilton@napleslaw.com
**Debbie Sines Crockett, Esq.**
Florida Bar No. 33706
dscrockett@napleslaw.com
esadams@napleslaw.com